IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TROY MITCHELL NAYLOR,

          Petitioner,

    vs.

PAM AHLIN, Director, Coalinga State Hospital,

          Respondent.

No. 2:10-cv-00039-JKS

MEMORANDUM DECISION

Troy Mitchell Naylor, a state civil committee appearing *pro se*, filed a Petition for Habeas Corpus relief under 28 U.S.C. § 2254. Naylor is currently in the custody of the California Department of Mental Health, incarcerated at the Coalinga State Hospital as a Sexually Violent Predator ("SVP").[1] Respondent has answered, and Naylor has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

In 1992, the Yuba County Superior Court sentenced Naylor to a ten year prison term for lewd acts and sodomy with children under California Penal Code §§ 286 and 288. As he was eligible for parole in March 1997, the Department of Corrections placed a temporary hold on Naylor to evaluate whether he was a SVP within the Sexually Violent Predator Act ("SVPA").[2] In August 1997 the superior court sustained the People's SVPA petition to commit Naylor civilly

---

[1] A state court's judgment of civil commitment satisfies § 2254's "in custody" requirement. *Duncan v. Walker*, 533 U.S. 167, 176 (2001).

[2] Cal. Welf. & Inst. Code §§ 6600 *et seq*.

to a secure facility for a two-year term.  Thereafter, Naylor was periodically committed to successive two-year terms.  Naylor does not challenge his initial conviction and sentence or his periodic commitments for two-year terms through 2005.  In October 2007 a jury found Naylor a SVP and the Yuba County Superior Court committed him to the Department of Mental Health for an indeterminate term.  Naylor appealed that decision to the California Court of Appeal, Third District, which affirmed Naylor's commitment in an unpublished, reasoned decision,[3] and the California Supreme Court denied review on October 28, 2009.  Naylor timely filed his Petition for relief in this Court on December 29, 2009.  Subsequently, on January 28, 2010, the California Supreme Court handed down its decision in *People v. McKee,*[4] in which it addressed some of the issues presented in this case.

Because they are well known to the parties and unnecessary for a determination of the issues raised in Naylor's Petition, as did the California Court of Appeal, this Court does not set forth the factual basis for the jury's finding that Naylor is a SVP.

## II.  GROUNDS RAISED/DEFENSES

At issue in this case is California Proposition 83, passed by the voters in November 2006, modifying the terms by which SVP's may be released from civil commitment under the SVPA. In essence, Proposition 83 changed the commitment from a two-year term, renewable only if the People proved to a jury beyond a reasonable doubt that the individual still met the definition of an SVP, to an indefinite commitment from which the individual may be released if he or she proves by a preponderance of the evidence that he or she is no longer an SVP.

---

[3] *People v. Naylor*, No. C057695, 2009 WL 2480915 (Cal. Ct. App. Aug. 14, 2009).

[4] 223 P.3d 566 (Cal. 2010).  In its analysis, this Court will also consider *McKee*.

In his Petition, Naylor challenges the 2006 amendments to the SVPA on five grounds:[5]
(1) the SVPA violates the *Ex Post Facto* Clause; (2) by failing to provide for mandatory periodic
hearings on continued commitment, the SVPA violates the Due Process Clause; (3) as revised,
the statute improperly shifts the burden of proof to the SVP to prove he or she should be
released; (4) commitment to an indefinite term deprives SVP's of the equal protection of the law;
and (5) the limitations placed upon rights of SVP's to petition the court for release violates the
First Amendment right to petition the government for redress of grievances.  Respondent does
not raise any affirmative defense to these grounds.[6]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.
§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or
involved an unreasonable application of, clearly established Federal law, as determined by the
Supreme Court of the United States" at the time the state court renders its decision or "was based
on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[5] In his Petition, which is a photocopy of extracts from a document prepared by or for
another individual with handwritten notes, Naylor lists seven "Issues Presented for Grounds of
Review."  Docket No. 1, at 2-3.  The body of the Petition, however, only addresses these five
grounds.  Docket No. 1, at 4-17.  The first enumerated ground simply states: "The trial Court
Erred in Applying the Revisions to the sexually violent predators, punishment, residence
restrictions and monitor initiative statute."  Docket No. 1, at 3.  The seventh enumerated ground
states: "Proposition 83 Violates the Single Subject Rule Governing Ballot Initiatives, and
Proposition 83, the U.S. Constitution forbids laws that retroactively impose criminal penalties or
increase punishment for past offenses."  *Id.*  The first ground is subsumed in its entirety by the
other grounds and, to the extent that it raises a cognizable issue in this Court, the seventh ground
is covered by the first ground discussed in the body of the Petition.  Accordingly, this Court will
not discuss the first and seventh grounds separately.  Consequently, Respondent's contention that
those two grounds are not properly exhausted is moot.

[6] *See* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

3

proceeding."[7]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[8]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[11]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[12]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[7] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[8] *Williams*, 529 U.S. at 412 (alteration added).

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[11] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

4

the trial with unfairness as to make the resulting conviction a denial of due process.'"[13]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[14]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[15]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[16]

---

[13] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[16] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

In applying this standard, this Court reviews the last reasoned decision by the state court.[17]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[18]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[19]

## IV.  DISCUSSION

Ground 1:  *Ex Post Facto* Claim

Naylor argues that because the acts for which he has been committed occurred prior to the amendment to the California Welfare and Institutions Code that changed the period of commitment from a definite period of two years to an indefinite period, application to him violates the *Ex Post Facto* Clause of the Constitution.  This Court disagrees.

In upholding a law similar to California's SVPA, the Supreme Court held that "[a]n Act, found to be civil, cannot be deemed punitive 'as applied' to a single individual in violation of the

---

[17] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining the "the last reasoned opinion on the claim . . . ").

[18] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[19] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

Double Jeopardy and *Ex Post Facto* Clauses and provide cause for release."[20]  Similarly, the

California Supreme Court has stressed the civil nature of a SVP commitment and rejected

challenges to California's SVPA based on the *Ex Post Facto* Clause of the Federal

Constitution.[21]  Thus, Naylor's *ex post facto* claim is foreclosed, and he is not entitled to relief

under his first ground.

Ground 2:  Lack of Mandatory Periodic Hearings

Naylor argues that, because he may be confined as an SVP only for so long as he meets

the definition of an SVP, the failure to provide for mandatory periodic hearings creates a risk that

he will be held beyond the time when he no longer qualifies as an SVP.  The California Court of

Appeal rejected Naylor's argument, holding:

> [Naylor] contends that indeterminate commitment, as provided by the
> revisions to the SVPA, violates due process because it fails to provide for mandatory
> periodic hearings on whether continued commitment is warranted, thereby "creat
> [ing] an unacceptable risk that an SVP detainee who no longer qualifies as a sexually
> violent predator will have his commitment continued in violation of his right to due
> process."  We disagree.
> [Naylor] again neglects to consider that, pursuant to section 6605, subdivision
> (a), he is entitled to an annual review of his present dangerousness by a qualified
> expert.  If dissatisfied with the review, he may request appointment of another mental
> health professional or he may file a petition under section 6608, thereby obtaining
> judicial review of his circumstances.  To the extent [Naylor's] contention implies that
> the annual report would necessarily be biased in favor of the government, he offers
> no basis for such speculation.  It simply defies both common sense and the
> presumption that an official duty will be regularly performed to conclude that the
> DMH has any desire to detain any person whom it believes is no longer dangerous

---

[20] *Seling v. Young*, 531 U.S. 250, 267 (2001); *c.f. Kansas v. Hendricks*, 521 U.S. 346,
361-71 (1997) (holding that involuntary confinement under Kansas' Sexually Violent Predator
Act did not violate The *Ex Post Facto* Clause because it did not "impose punishment").

[21] *McKee*, 223 P.3d at 576-78; *Hubbart v. Superior Court*, 969 P.2d 584, 605-11 (Cal.
1999); *see also Jones v. Blanas*, 393 F.3d 918, 927-28 (9th Cir. 2004) (stating that detention
under the SVPA is civil in nature).

merely to avoid placing the government in a position where it, instead of [Naylor], will bear the burden of proof.[22]

This Court also notes that in its subsequent decision in *McKee*, the California Supreme Court characterized the requirement of an annual evaluation under § 6605(a) as being "mainly for determining whether involuntary commitment is still required, or whether the SVP has sufficiently changed as a result of treatment to be released."[23]   Contrary to Naylor's contentions, California does provide for mandatory, annual review of an SVP's continued commitment by the mental health department.   The Supreme Court has never held in the context of individuals involuntarily civilly committed that the Constitution requires that a state must hold a judicial hearing at specified intervals to determine whether continued commitment is necessary. Consequently, this Court cannot say that the decision of either the California Court of Appeal in this case or the California Supreme Court in *McKee* was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time each state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[24]   Naylor is not entitled to relief under his second ground.

Ground 3:  Burden of Proof/Due Process

Naylor argues that by changing the procedure from one in which the People have the burden of proof to show beyond a reasonable doubt that an individual continued to meet the

---

[22] *People v. Naylor*, No. C057695, 2009 WL 2480915, at *3 (Cal. Ct. App. Aug. 14, 2009) (alteration added).

[23] *McKee*, 223 P.3d at 576.

[24] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

requirements of the SVPA, to one in which the committee has the burden of proving by a

preponderance of the evidence that he or she is no longer an SVP violates the Due Process

Clause.  In rejecting that argument, the California Court of Appeal held:

> Finally, as to shifting the burden of proof to [Naylor] to prove his nondangerousness, we perceive no fundamental unfairness in this procedure. [Naylor] has previously been determined, beyond a reasonable doubt, to be an SVP. It is not unfair or unreasonable to give that adjudication preclusive effect, absent proof of some change in the committed person's mental condition. Moreover, since it is [Naylor] who is asserting the change in his mental status, it is not unfair or unreasonable to require him to carry the burden of proving his own assertion.  (See Evid.Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.
>
> To the extent [Naylor] relies on *Foucha v. Louisiana* (1992) 504 U.S. 71 [118 L.Ed.2d 437], to support his argument that due process forbids placing the burden of proof on him, that reliance is misplaced.  *Foucha* involved the issue of whether "a person acquitted by reason of insanity [could] be committed to a mental institution until he is able to demonstrate that he is not dangerous to himself and others, even though he does not suffer from any mental illness."  (*Id.* at p. 73 [118 L.Ed.2d at p. 444].)  In *Foucha,* a review panel at the institution of confinement determined that "there had been no evidence of mental illness since [his] admission."  (*Id.* at p. 74 [118 L.Ed.2d at p. 444].)  Nonetheless, the state continued to confine Foucha based on the determination that he was dangerous to himself and others.  (*Id.* at p. 75 [118 L.Ed.2d at p. 445].)  In concluding that this violated due process, the United States Supreme Court commented that Foucha was "not now entitled to an adversary hearing at which the State must prove by clear and convincing evidence that he is demonstrably dangerous to the community.  Indeed, the State need prove nothing to justify continued detention, for the statute places the burden on the detainee to prove that he is not dangerous."  (*Id.* at pp. 81-82 [118 L.Ed.2d at p. 449].)
>
> The foundational problem in *Foucha* was that the state insisted on keeping Foucha confined even though everyone agreed he was not mentally ill.  It was in this context that the United States Supreme Court found it objectionable for the state to absolve itself of any burden of proof and to require Foucha to prove he was not dangerous.  That situation is in no way comparable to proceedings under section 6608 of the SVPA.  When a confined person petitions for discharge under that statute on the ground he is no longer an SVP, it will necessarily be contrary to the initial adjudication and to the extant determination of the department that he is, and remains, an SVP.  Nothing in *Foucha* suggests that due process forbids a state from imposing the burden of proof on the committed person in such circumstances.

In sum, defendant has failed to establish that his indeterminate commitment under the amended SVPA violates due process.[25]

The California Supreme Court also rejected this argument in *McKee*, holding:

McKee contends that it is the fact that his commitment is now indefinite, and that it is his burden to show by a preponderance of the evidence that he is no longer an SVP, that violates his federal due process rights. In making this argument, he relies in large part on *Addington v. Texas* (1979) 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (*Addington* ). In *Addington,* the court held unconstitutional a civil involuntary commitment statute that authorized an indefinite commitment when the state proved by a preponderance of the evidence that the individual was mentally incompetent. (*Id.* at pp. 419–422, 99 S.Ct. 1804.) As *Addington* explained: "The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill. Under the Texas Mental Health Code, however, the State has no interest in confining individuals involuntarily if they are not mentally ill or if they do not pose some danger to themselves or others." (*Addington, supra,* 441 U.S. at p. 426, 99 S.Ct. 1804.) The *Addington* court assessed the risk of improperly subjecting an individual to civil commitment: "At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable. Obviously, such behavior is no basis for compelled treatment and surely none for confinement. However, there is the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct. Loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered. [¶] The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." (*Id.* at pp. 426–427, 99 S.Ct. 1804.)

The *Addington* court therefore concluded that "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." (*Addington, supra,* 441 U.S. at p. 427, 99 S.Ct. 1804.) It held that due process required proof by clear and convincing evidence at the appellant's initial civil commitment hearing. (*Id.* at p. 433, 99 S.Ct. 1804.)

---

[25] *Naylor*, 2009 WL 2480915 at *3-4. This is reproduced exactly as it appears in the original.

McKee argues *Addington* requires the state to prove by at least clear and convincing evidence in not only the first commitment hearing but periodically at subsequent commitment hearings as well, and that therefore section 6608, subdivision (i) violates due process by imposing on the petitioner the burden of proving by a preponderance of the evidence that he is entitled to release. As explained below, the United States Supreme Court case law decided after *Addington* leads to the conclusion that the clear and convincing evidence standard does not apply to subsequent commitment proceedings for SVP's.

The primary case relied on by the People is *Jones v. United States* (1983) 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (*Jones* ). *Jones* considered a District of Columbia statute that governed civil commitment of those who had been adjudged not guilty by reason of insanity of criminal charges (NGI'S). Under that statutory scheme, a defendant was required to prove his affirmative defense of insanity by a preponderance of the evidence. (*Id.* at p. 356, fn. 1, 103 S.Ct. 3043.) After his acquittal by reason of insanity, another statute provided for his immediate commitment, with a hearing required within 50 days to determine whether he was eligible for release. At the hearing, he had "the burden of proving by a preponderance of the evidence that he [was] no longer mentally ill or dangerous. [Citation.]" (*Id.* at p. 357, 103 S.Ct. 3043.) If he did not meet that burden at the 50–day hearing, he was "entitled [by statute] to a judicial hearing every six months at which he may establish by a preponderance of the evidence that he is entitled to release. [Citation.]" (*Id.* at p. 358, 103 S.Ct. 3043, fn. omitted.)

The court rejected a due process challenge to the statute. Congress had determined "that a criminal defendant found not guilty by reason of insanity in the District of Columbia should be committed indefinitely to a mental institution for treatment and the protection of society. [Citations.]" (*Jones, supra,* 463 U.S. at pp. 361–362, 103 S.Ct. 3043.) An NGI determination "establish[d] two facts: (I) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness." (*Id.* at p. 363, 103 S.Ct. 3043.) *Jones* stated: "Congress has determined that these findings constitute an adequate basis for hospitalizing the acquittee as a dangerous and mentally ill person. [Citations.] We cannot say that it was unreasonable and therefore unconstitutional for Congress to make this determination. [¶] The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness. [Citation.] Indeed, this concrete evidence [of commission of a criminal act] generally may be at least as persuasive as any predictions about dangerousness that might be made in a civil-commitment proceeding." (*Id.* at p. 364, 103 S.Ct. 3043, fns. omitted.)

Distinguishing *Addington,* the court explained that in equating NGI commitment with the ordinary civil commitment at issue in *Addington,* "petitioner ignores important differences between the class of potential civil-commitment candidates and the class of insanity acquittees that justify differing standards of proof. The *Addington* Court expressed particular concern that members of the public could be confined on the basis of 'some abnormal behavior which might be perceived

11

by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable.' [Citations.] . . . But since automatic commitment under [the District of Columbia's NGI commitment statute] follows only if the *acquittee himself* advances insanity as a defense and proves that his criminal act was a product of his mental illness, there is good reason for diminished concern as to the risk of error.  More important, the proof that he committed a criminal act as a result of mental illness eliminates the risk that he is being committed for mere 'idiosyncratic behavior[.]' [Citation.]" (*Jones, supra,* 463 U.S. at p. 367, 103 S.Ct. 3043, fns. omitted.)   *Jones* therefore concluded that "concerns critical to our decision in *Addington* are diminished or absent in the case of insanity acquittees.  Accordingly, there is no reason for adopting the same standard of proof in both cases . . . .  The preponderance of the evidence standard comports with due process for commitment of insanity acquittees." (*Jones, supra,* 463 U.S. at pp. 367–368, 103 S.Ct. 3043.)

Although McKee was not found not guilty by reason of insanity, he has been found beyond a reasonable doubt in his initial commitment to meet the definition of an SVP.  That finding is, for present constitutional purposes, the functional equivalent of the NGI acquittal in *Jones.*  As in *Jones,* McKee has already been found not only to have previously committed the requisite criminal acts but was found beyond a reasonable doubt to have "a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).)  Therefore, as in *Jones,* the danger recognized in *Addington* "that members of the public could be confined on the basis of 'some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable' " or "for mere 'idiosyncratic behavior'" (*Jones, supra,* 463 U.S. at p. 367, 103 S.Ct. 3043) is greatly diminished.  Accordingly, as in *Jones,* the requirement that McKee, after his initial commitment, must prove by a preponderance of the evidence that he is no longer an SVP does not violate due process.[26]

The Supreme Court has never held that the state bears the burden of proof to *continue* an involuntary civil commitment once, as in this case, it has been established by at least "clear and convincing" evidence.[27]  This Court finds the reasoning of the California Supreme Court in *McKee* persuasive.  Consequently, this Court cannot say that the decision of either the California

---

[26] *McKee*, 223 P.3d at 573-75.  This is reproduced exactly as it appears in the original.

[27] *Addington v. Texas*, 441 U.S. 418, 428-31 (1979) (rejecting the use of the "beyond a reasonable doubt" standard was constitutionally required in civil commitment proceedings).

Court of Appeal in this case or the California Supreme Court in *McKee* was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time each state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[28]  Naylor is not entitled to relief under his third ground.

Ground 4:  Equal Protection

Naylor contends subjecting SVP's such as him to the amended SVPA violates the equal protection clause of the Fourteenth Amendment because persons committed under the Mentally Disordered Offender ("MDO") Act, Cal. Penal Code § 2960 *et seq*., and persons committed because they were found not guilty by reason of insanity (NGI), Cal. Penal Code § 1026 *et seq*., are not subject to indeterminate commitments and can more readily obtain judicial review of their commitments.  Although the California Court of Appeal rejected Naylor's argument,[29] the California Court in *McKee*, after finding that SVP's were similarly situated to those committed under the MDO and NGI statutes,[30] remanded the case, holding:

> We therefore remand this case to the trial court to determine whether the People, applying the equal protection principles articulated in *Moye* and related cases discussed in the present opinion, can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment.  The trial court may, if appropriate, permit expert testimony.
> In remanding the case, we make clear that different classes of individuals civilly committed need not be treated identically.  In *Hofferber, supra,* 28 Cal.3d 161, 167 Cal.Rptr. 854, 616 P.2d 836, even as we affirmed that fundamental distinctions

---

[28] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[29] *Naylor*, 2009 WL 2480915 at *5-6.

[30] *McKee*, 223 P.3d at 582-87.

between classes of individuals subject to civil commitment are subject to strict scrutiny (*id.* at p. 171, fn. 8, 167 Cal.Rptr. 854, 616 P.2d 836), we also acknowledged the government's legitimate capacity to make reasonable distinctions: "The state has compelling interests in public safety and in humane treatment of the mentally disturbed. [Citations.]  It may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified. [Citations.]  Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of state power." (*Id.* at pp. 171–172, 167 Cal.Rptr. 854, 616 P.2d 836, fn. omitted.)  Moreover, we have recognized "the importance of deferring to the legislative branch in an area which is analytically nuanced and dependent upon medical science." (*Hubbart, supra,* 19 Cal.4th at p. 1156, 81 Cal.Rptr.2d 492, 969 P.2d 584.)  But the government has not yet shown that the special treatment of SVP's is validly based on the degree of danger reasonably perceived as to that group, nor whether it arises from any medical or scientific evidence.  On remand, the government will have an opportunity to justify Proposition 83's indefinite commitment provisions, at least as applied to McKee, and demonstrate that they are based on a reasonable perception of the unique dangers that SVP's pose rather than a special stigma that SVP's may bear in the eyes of California's electorate.

Moreover, we emphasize that mere disagreement among experts will not suffice to overturn the Proposition 83 amendments.  The trial court must determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based—not whether they are incontrovertible or uncontroversial.  The trial court is to determine not whether the statute is wise, but whether it is constitutional.[31]

Respondent argues that this Court's analysis is limited to reviewing the earlier decision of the California Court of Appeal in this case without regard to *McKee*.  Strangely, although *McKee* clearly and unequivocally favors Naylor, he does not respond to this argument in his Traverse. The failure of Naylor to controvert Respondent's argument notwithstanding, this Court must still determine whether, as a matter of law, it is bound to follow *McKee*.  If bound by *McKee*, this Court must not only grant the Petition, but also fashion the appropriate remedy.[32]

---

[31] *Id.* at 587-89 (footnotes omitted).  This is reproduced exactly as it appears in the original.

[32] *See* 28 U.S.C. § 2243 (this Court must "dispose of the matter as law and justice require").

14

Under § 2254, this Court must apply the law as determined by the Supreme Court of the United States at the time of the relevant state-court decision.[33]  *McKee*, a decision of the California Supreme Court that postdated both the decision of the California Court of Appeal and the denial of review by the California Supreme Court in this case, meets neither test.  But that does not necessarily end this Court's inquiry.  This Court must still determine whether the decision of the California Court of Appeal was contrary to or involved an unreasonable application of clearly established law as determined by the Supreme Court at the time the decision was rendered.[34]  For the reasons that follow, the decision of the California Court of Appeal was not.

That the Equal Protection Clause of the Fourteenth Amendment protects a person against being treated differently from others similarly situated is well-settled.[35]  The Supreme Court has also held in cases where, as here, a person is civilly committed after the completion of a prison sentence, the mere fact that the person has been convicted is inadequate to justify a difference in the procedural and substantive protections that are generally available to others civilly committed.[36]  That rule does not, however, bar all differences in treatment for those who may

_____

[33] 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 402-06; *see also Andrade,* 538 U.S. at 70-75 (explaining this standard).

[34] 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 402-06; *see also Andrade,* 538 U.S. at 70-75 (explaining this standard).

[35] *See, e.g., City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (2003) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

[36] *See Baxstrom v. Herold*, 383 U.S. 107, 110-12 (1966) (holding that the denial of a jury trial to determine continued commitment available to other civil committees constituted a denial of equal protection); *see also Jackson v. Indiana*, 406 U.S. 715, 723-24 (1972) (applying *Baxstrom* to a pretrial commitment).

appear to be similarly situated.  The general rule is that legislation is presumed to be valid

provided that the difference is rationally related to a legitimate state interest.[37]

In this case, the Court of Appeal relied in substantial part on the legislative findings that

accompanied Proposition 83 in concluding that SVP's were more dangerous than MDO's as

establishing the requisite rational relationship to a legitimate state interest.[38]  In *McKee*, the

California Supreme Court disagreed with the Court of Appeal's reliance in that case on the same

legislative findings, holding:

> When a constitutional right, such as the right to liberty from involuntary
> confinement, is at stake, the usual judicial deference to legislative findings gives way
> to an exercise of independent judgment of the facts to ascertain whether the
> legislative body "has drawn reasonable inferences based on substantial evidence."
> (*Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543,
> 569, 63 Cal.Rptr.2d 467, 936 P.2d 473, citing *Turner Broadcasting System, Inc. v.
> FCC* (1994) 512 U.S. 622, 666, 114 S.Ct. 2445, 129 L.Ed.2d 497 (lead opn. of
> Kennedy, J.); *see also Spiritual Psychic Science Church v. City of Azusa* (1985) 39
> Cal.3d 501, 514, 217 Cal.Rptr. 225, 703 P.2d 1119.)  Thus, for example, where a
> constitutional right to privacy is at issue, evidence introduced at trial may call into
> question legislative fact-finding.  (*American Academy of Pediatrics v. Lungren*
> (1997) 16 Cal.4th 307, 354–356, 66 Cal.Rptr.2d 210, 940 P.2d 797)  Therefore, the
> legislative findings recited in the ballot initiative do not by themselves justify the
> differential treatment of SVP's.[39]

---

[37] *Cleburne*, 473 U.S. at 440.

[38]  *People v. Naylor*, No. C057695, 2009 WL 2480915, at*5-6 (Cal. Ct. App. Aug. 14,
2009).

[39] *McKee*, 223 P.2d at 585-86.  The previously published decision of the Court of Appeal
is found at 73 Cal. Rptr. 3d 661, 683-87 (Ct. App. 2008), *review granted*, 187 P.3d 887 (Cal.
2008).  Two other California Courts of Appeal in previously published decisions also relied on
the legislative findings accompanying Proposition 83 in holding that Proposition 83 did not
violate the Equal Protection Clause.  *People v. Boyle*, 80 Cal. Rptr. 3d 437, 451-53 (Ct. App.
2008), *review granted*, 194 P.3d 1025 (Cal. 2008); *People v. Riffey*, 77 Cal. Rptr. 3d 526, 536-39
(Ct. App. 2008), *review granted*, 190 P.3d 535 (Cal. 2008).

In *Turner Broadcasting*, cited by the California Supreme Court in *McKee*, the Supreme

Court held:

> That Congress' predictive judgments are entitled to substantial deference does
> not mean, however, that they are insulated from meaningful judicial review
> altogether. On the contrary, we have stressed in First Amendment cases that the
> deference afforded to legislative findings does "not foreclose our independent
> judgment of the facts bearing on an issue of constitutional law. This obligation to
> exercise independent judgment when First Amendment rights are implicated is not
> a license to reweigh the evidence *de novo,* or to replace Congress' factual predictions
> with our own. Rather, it is to assure that, in formulating its judgments, Congress has
> drawn reasonable inferences based on substantial evidence.[40]

Research by this Court has not uncovered any case in which the Supreme Court applied the

*Turner Broadcasting* rule in any case other than in the context of the First Amendment. Indeed,

the Supreme Court has specifically noted:   "We have never required Congress to make

particularized findings in order to legislate, absent a special concern such as protection of free

speech."[41]

This Court further notes that in a later case applying *McKee*, the California Court of

Appeal, after holding an evidentiary hearing, found that there was a legitimate state interest in

treating SVP's differently than MDO's and NGI's:

> However, the Supreme Court did not hold, as a matter of law, that there was
> no justification for different treatment for SVP's and MDO's. It determined that
> MDO's and SVP's were "similarly situated for our present purposes," and held that
> the state was required "to give some justification for this differential treatment."
> Being similarly situated with others who receive different treatment under the law
> does not necessarily mean that the challenged statute violates equal protection
> guarantees. "Variation of the length and conditions of confinement, *depending on
> degrees of danger reasonably perceived* as to special classes of persons, is a valid

---

[40] *Turner Broad. Sys., Inc., v. F.C.C.*, 512 U.S. 622, 666 (plurality) (citations omitted).

[41] *Gonzales v. Raich*, 545 U.S. 1, 21 (2005) (comparing *United States v. Lopez*, 514 U.S.
549, 562 (1995), and *Perez v. United States*, 402 U.S. 146, 156 (1971), to *Turner Broadcasting*.)

exercise of state power."  Instead, a finding that a defendant is similarly situated requires us to determine whether the statutorily authorized difference in treatment withstands the appropriate level of scrutiny.

SVP's represent a very small number of dangerous people that have committed certain specified crimes and suffer a certain type of mental illness predisposing them to commit sexually violent offenses.  As our Supreme Court stated in *Cooley v. Superior Court, supra,* 29 Cal.4th at page 253, 127 Cal.Rptr.2d 177, 57 P.3d 654, the SVP Act "narrowly targets 'a small but extremely dangerous group of [SVP']s . . . .'"  SVP's diagnosed as pedophiles pose a greater risk of reoffending. Studies of sex offenders suggest that sexual offending may be different from other types of crime:  Although sexual offenders may commit nonsexual crimes, nonsexual criminals rarely recidivate with sexual offenses.  In this respect, MDO's differ from SVP's in that they are less likely to commit a sexually violent offense upon release from custody.

By definition, an SVP is a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is *likely that he or she will engage in sexually violent criminal behavior.*  A "diagnosed mental disorder" includes a congenital or acquired condition affecting the emotional or volitional capacity that *predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.*  Thus, an SVP's mental disorder predisposes him or her to commit a sexual offense.

Further, as Dr. Davis testified, certain classes of persons diagnosed with pedophilia, namely, homosexual nonrelated offenders such as defendant, have the highest rate for repeated offending compared with other sex offenders. She also testified that because SVP's are a special group of sexual offenders, the policy of the law is to corral them, keeping them away from society.  This is due in part to the complex and often compulsive nature of the disorder.  Several studies have failed to find any convincing evidence that treatment is effective in reducing recidivism of sexual offenses.

Whereas an SVP's mental disorder must predispose the person to commit criminal sex acts, no comparable showing is required for an MDO.  For MDO's, the prisoner with the "severe mental disorder" (an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment, or which grossly impairs behavior, or that demonstrates evidence of an acute brain syndrome [Pen.Code, § 2962, subd. (a)]) must be found to represent "a substantial danger of physical harm to others." (Pen.Code, § 2962, subd. (d)(1).) No recent overt act must be proven to demonstrate that the prospective MDO constitutes a "substantial danger of physical harm." (Pen.Code, § 2962, subd. (f).)

Further, by statutory implication, an MDO must be found to be amenable to treatment. (Pen.Code, § 2962, subd. (d)(1) ["... prisoner cannot be kept in remission without treatment, ..."].)  Amenability to treatment is not required for an SVP, nor is it required for treatment of that person. (§ 6606, subd. (b).)

SVP's are thus a subset of prisoners with severe mental disorders, who are predisposed to commit acts of sexual violence by virtue of their mental disorder, having been convicted of a violent sexual offense previously, as opposed to MDO's, who represent a substantial danger of physical harm to others due to a severe mental disorder, without having to prove an overt act. The SVPA thus requires proof of more than a mere predisposition to violence; it requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated.

SVP's have a poor prognosis for successful treatment. In the present case, the trial court heard evidence that SVP treatment has a minimal rate of success. Dr. Davis testified that approximately 550 SVP's had been committed for treatment. Of that number, only 15 or 16 persons have completed the treatment program. At trial, defense counsel argued to the court that this statistic rendered the program of treatment a "joke." The probability of successfully completing sex offender treatment is thus 2.9 percent (16 divided by 550).

In other words, the SVPA targets persons with mental disorders that may never be successfully treated. The probability that defendant would reoffend by committing a new sexually violent crime was estimated in the medium-high range. Defendant's scores on the Static–99 instrument place him in the 7.7 to 19.1 percent risk of reoffending within five years, and 8.2 to 27.3 percent risk of reoffending within 10 years. Because defendant has refused to participate in his own treatment for the bulk of his past commitments, the probability of his successful completion of sex offender treatment is further reduced.

DMH research shows that between 1986 and 2001, persons committed to the Forensic Conditional Release Program (CONREP) were rearrested 10.6 percent of the time, but the subsequent offenses were significantly less serious than the original offenses. This is roughly half the number of SVP recidivists, compelling the conclusion that the recidivism risk of SVP's is different from, and greater than, the risk posed by persons committed as MDO's.[42]

In addition to *Vinh Nguyen*, three separate California intermediate appellate courts prior

to *McKee* determined that the findings that accompanied Proposition 83 were sufficient. In light

of these decisions and in the absence of United States Supreme Court authority directly on point,

this Court cannot say that the decision of the California Court of Appeal in this case was "so

lacking in justification that there was an error well understood and comprehended in existing law

---

[42] *People v. Vinh Nguyen*, 123 Cal. Rptr. 3d 700, 709-11 (Ct. App. 2011), *review pending* (emphasis in the original) (citations and footnotes omitted). This is reproduced exactly as it appears in the original.

beyond any possibility for fairminded disagreement," as mandated by *Schriro* and *Richter*.[43]

Consequently, this Court cannot say that the decision of the California Court of Appeal in this

case was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" at the time the state court

rendered its decision or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."[44]   Naylor is not entitled to relief under his

fourth ground.[45]

<u>Ground 5:  First Amendment Right to Petition for Redress of Grievances</u>

Naylor argues that the amendments to the SVPA impermissibly impair his First

Amendment right of access to the courts.  The California Court of Appeal summarized Naylor's

argument, an amalgamation of several alleged impediments to judicial review, as follows:

> [Naylor] contends the amended SVPA denies him his First Amendment right
> to meaningful access to the courts because:  (1) an SVP can file a petition for release

---

[43] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted);
*see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-
Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir.
2009) (explaining the difference between principles enunciated by the Supreme Court that are
directly applicable to the case and principles that must be modified in order to be applied to the
case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[44] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also
Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[45] The decision of this Court should not, indeed cannot, be construed as criticizing or
disagreeing with the holding of the California Supreme Court in *McKee*.  If the California
Supreme Court is incorrect in its interpretation of the Equal Protection Clause as applied to the
SVPA, it is up to the Supreme Court to correct that error on *certiorari*, not a federal district court
in a federal habeas proceeding.  Under the strictures of AEDPA, this Court is limited to
determining whether the decision of the California Court of Appeal *in this case* was contrary to
established Supreme Court law at the time the state court rendered its decision—nothing more,
nothing less.  28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 402-06 (2000).  Consequently, the
scope of this decision is so limited.

under section 6605 only if the department determines the person is no longer an SVP; and (2) a petition under section 6608, which can be filed without the concurrence of the DMH, does not amount to meaningful access to the courts because there is no provision for appointment of a medical expert, the trial court can summarily deny the petition without a hearing if the court determines it is frivolous, and the SVP bears the burden of proof on such a petition.[46]

The California Court of Appeal rejected Naylor's arguments, holding:

> It is true that "[i]nmates are guaranteed the right to adequate, effective and meaningful access to the courts under the Fourteenth Amendment." (*In re Grimes* (1989) 208 Cal.App.3d 1175, 1182.) "The right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances ." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 647, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68.) [Naylor], however, has failed to show that the amended SVPA violates that right.
>
> [Naylor] acknowledges that "Under section 6608, subdivision (a), the SVP detainee has the right to counsel." With regard to the appointment of a medical expert, we have concluded already that although section 6608 does not expressly provide for the appointment of a defense expert for indigent detainees, such a right is provided by section 6605. As for the court's power (indeed obligation) to deny a petition for release or discharge that is based on frivolous grounds, [Naylor] cannot legitimately assert that he has the constitutional right to an evidentiary hearing on a petition for release or discharge that the court has determined is frivolous. (See *Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th at p. 648, fn. 4 ["The right to petition is not absolute, providing little or no protection for baseless litigation or sham or fraudulent actions"].) Finally, [Naylor] offers no authority that suggests his constitutional right to meaningful access to the courts includes the right to have the government prove beyond a reasonable doubt at regular intervals that he remains an SVP. In the absence of such authority, [Naylor's] challenge to the amended SVPA based on his right to access to the courts fails.[47]

The right of access to the courts is an aspect of the First Amendment right to petition the

government for redress of grievances,[48] made applicable to the states by the Fourteenth

---

[46] *People v. Naylor*, No. C057695, 2009 WL 2480915, at *6 (Cal. Ct. App. Aug. 14, 2009) (alteration added).

[47] *Id.* at *6-7 (alteration added).

[48] *Bill Johnson's Rest., Inc. v. Nat'l. Labor Relations Bd.*, 461 U.S. 731, 741 (1983) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

Amendment,[49] including the rights of persons held in custody under the authority of state law to "adequate, effective, and meaningful" access to the courts.[50]  Much, if not most, of Naylor's argument is based upon snippets from various Supreme Court decisions that do not fit the context of this case.  The most serious flaw in Naylor's argument is that, although the provisions of the SVPA place restrictions or conditions on an SVP's access to the courts, the SVPA does not prohibit an SVP from seeking judicial relief.[51]  The Supreme Court has never held that even a state prisoner has an unfettered right to access the courts.  Naylor cites no decision of the Supreme Court that comes close to finding that the impediments or restrictions of which he complains violates his First Amendment right to redress his grievances through the courts, or any other constitutionally guaranteed right.

More importantly, however, the California Court of Appeal determined that Naylor's arguments were *factually* incorrect and misconstrued the law.  As an issue of state law, it is beyond the purview of this court.[52]  This Court is bound by the interpretation placed upon the California statutes in question by the California Court of Appeal,[53] particularly where, as here,

---

[49] *Edwards v. South Carolina*, 372 U.S. 229, 235-36 (1963).

[50] *See Bounds v. Smith*, 430 U.S. 817, 822 (1977).

[51] *E.g.*, *Ex Parte Hull*, 312 U.S. 546 (1941).

[52] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law); *Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief).

[53] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

22

the highest court in the state has denied review of the lower court's decision.[54]   Consequently,

this Court cannot say that the decision of the California Court of Appeal in this case was

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" at the time the state court rendered its

decision or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[55]   Naylor is not entitled to relief under his fifth ground.

## V.  CONCLUSION AND ORDER

Naylor is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** this Court grants a Certificate of Appealability

solely on the question of whether the amendment to the Sexually Violent Predators Act by

Proposition 83 violates the Equal Protection Clause.[56]   Any further request for a Certificate of

Appealability must be addressed to the Court of Appeals.[57]

---

[54] *Id.*; *see West v. A.T.&T,* 311 U.S. 223, 237 (1940) ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[55] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[56] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[57] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 1, 2011.

_/s/ James K. Singleton, Jr._
JAMES K. SINGLETON, JR.
United States District Judge
